# EXHIBIT A

STATE OF MINNESOTA                    DISTRICT COURT

COUNTY OF RAMSEY                    SECOND JUDICIAL DISTRICT

---

Jerald Boitnott,                              Court File No.:

             Plaintiff,

                                              **SUMMONS**
vs.

M&H Gas and Miller & Holmes, Inc.,

             Defendants.

---

THIS SUMMONS IS M&H Gas and Miller & Holmes, Inc.:

    1.    YOU ARE BEING SUED. The Plaintiffs have started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court, and there may be no court file number on this summons.

    2.    YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

        Patrick W. Michenfelder, Esq.
        Chad A. Throndset, Esq.
        Throndset Michenfelder Law Office, LLC
        One Central Avenue West, Suite 203
        St. Michael, MN 55376

    3.    YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6. ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to this Complaint even if you expect to use alternative means of resolving this dispute.

THRONDSET MICHENFELDER, LLC

Dated: May \_\_\_, 2018

By: _____
    Patrick W. Michenfelder (#024207X)
    Chad A. Throndset (#0261191)
Cornerstone Building
One Central Avenue W., Suite 203
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: pat@throndsetlaw.com
Email: chad@throndsetlaw.com
*Attorneys for Plaintiff*

2

STATE OF MINNESOTA
COUNTY OF RAMSEY

DISTRICT COURT
SECOND JUDICIAL DISTRICT

Jerald Boitnott,

Court File No.::

Plaintiff,

vs.

**COMPLAINT**

M&H Gas and Miller & Holmes, Inc.,

Defendants.

Plaintiff, by and through his undersigned counsel, brings this action against M&H Gas and Miller & Holmes, Inc. for violations of the Americans With Disabilities Act, 42 U.S.C. §12181, *et seq.* (the "ADA") and its implementing regulations, and allege as follows:

## INTRODUCTION

1.     This case concerns Defendants' federal statutory obligation to ensure their facility becomes, *and remains*, compliant with the ADA. Accordingly, Plaintiff seeks: 1) remediation of the unlawful architectural barriers described below; and 2) modification of Defendants' ADA related policies, procedures, and practices in order to ensure that the facility remains ADA complaint.  Plaintiff also seeks a nominal monetary award, his reasonable attorneys' fees, litigation expenses, and costs, and such other relief as is just and proper, and/or is allowable under Title III of the ADA.

1

2.    The ADA, enacted in 1990, is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. The ADA uses different means than other civil rights laws, but the purpose of the laws is the same: the eradication of discrimination. As one legal scholar explained: A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people. Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

3.    Though disability rights laws are supposed to prevent the continued isolation and segregation of people with disabilities in the same tradition as other civil rights laws, some appear to regard disability rights requirements – particularly those involving physical access requirements, such as ramps and hand rails – as different, and less important, than other civil rights. *The Case of "Abusive" ADA Litigation, supra,* at 24. Some also appear to assume that ADA cases are abusive or unnecessary drains on courts; but private enforcement is central to accomplishment of the ADA's rightful purposes and, as has been demonstrated repeatedly, compliance does not happen without the credible threat of private enforcement. *Id.* at 9.

4.    Title III of the ADA prohibits discrimination by places of "public accommodation," as that term is defined by 42 U.S.C. §12181 (7). It requires places of

public accommodation to be readily accessible to, an independently usable by, individuals with disabilities. 42 U.S.C. § 12182.

5.    Under 28 C.F.R. § 36.201 (b) both the landlord who owns a building that houses a place of public accommodation and the tenant who owns or operates a place of public accommodation subject to the requirements of the ADA.

6.    Violation of the ADA's standards of accessible design are actionable violations of the act. See e.g., *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).

7.    Plaintiff seeks a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a) directing Defendants to make readily achievable alterations to their facilities so as to remove architectural barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities in accordance with the requirements of the ADA.

8.    In addition to remediation of the architectural barriers above, injunctive relief as to Defendants' ADA related policies, procedures and practices is required to ensure Defendants' facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and 28 C.F.R. § 36.211 and 36.501.

9.    The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendants have failed to identify and correct the violations even though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of

Defendants' ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

10. Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and complaint, and no assurance that Defendants will stay abreast of their ADA related obligations under the law.

11. Plaintiff also seeks a nominal monetary award in accordance with authority including *Tayler Bayer v. Neiman Marcus Group, Inc.*, (No. 11-17920 (9th Cir. 2014) and their reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505 and such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

12. Despite passage of the ADA more than 25 years ago, to this date, Defendants' property is not fully accessible to, and independently usable by, persons with disabilities. Defendants have failed to remove architectural barriers and take the actions clearly required of it by the ADA, even though such actions are readily achievable. Defendants' conduct constitutes an ongoing and continuous violation of the law.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises under Title III of the Americans with Disabilities Act (the ADA), 42 U.S.C. §§ 12181-12189, which provides for concurrent state and federal court jurisdiction. Federal jurisdiction arises under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action includes federal law claims brought pursuant to Title III of

the ADA. The Court also has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57 and/or Minn. Stat. § 555.01 et. seq. and Minn. R. Civ. Pro. 57.

14.     Venue in this judicial district is proper because Defendants are located in and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

15.     Plaintiff Mr. Boitnott's medical records confirm the following diagnoses: traumatic brain injury; spinal cord injury; traumatic myelopathy status post cervical decompression and fusion; minimally displaced fracture of the right spinous process of C4 & C5; nondisplaced fracture of the right C7 superior endplate, transverse process and superior articulating process; traumatic posterior ligamentous edema extending from C1 to C-5-C6; C4-C5 anterior longitudinal ligament injury and calcified disc extrusion with spinal cord compression; left segmental femur fracture involving a periprosthetic B2 the level of his total hip arthroplasty; left segmental femur fracture status post stabilization now requiring left knee immobilizer and TTWB; right posterior talus fracture with cam boot immobilization (WBAT); cognitive impairment, improving; right upper extremity weakness, gait instability; inferior vena cava filter placement; dysphagia, cervical, improving; delirium, resolved; insomnia, improving; orthostatic hypotension, improving; leukocytosis, improving; normocytic anemia secondary to acute blood loss, stable;

degenerative joint disease; obstructive sleep apnea; and gastroesophageal reflux disease. Mr. Boitnott suffers from, and at all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 USC § 12102 (2) because his mental and physical impairments substantially limit one or more of his major life activities and he is therefore a member of the protected class under the ADA and the regulations implementing the ADA set forth at 28 CFR § 36.101 et. seq.

16. Boitnott has an acute understanding of the discrimination people with disabilities regularly encounter when businesses ignore the ADA – and the humiliation, embarrassment, stigma, physical discomfort, stress, strain, fatigue and isolation from friends and family that results. Boitnott is also well aware of the benefits for the disabled when responsible business owners take the ADA's requirements seriously. Boitnott is very much committed to doing all that he can to help himself, and other disabled people, by holding businesses accountable for ignoring the ADA.

17. Compliance with Title III is critical for the disabled community. If, for example, a toilet is not accessible with adequate maneuvering space, grab bars, etc. the disabled either cannot toilet, or cannot do so without assistance. Without compliance, individuals could be forced to urinate and defecate on themselves because a place of public accommodation did not have an accessible toilet. Similarly, without a properly striped parking lot including accessible parking and an accompanying access isle, disabled individuals face the threat that another may park so close to the vehicle he or she is travelling in that he or she will be unable to access that vehicle until the car parked beside

6

it is moved, or without excessive struggle and risk of injury. And without an accessible entrance, disabled individuals are excluded from independent access to the premises entirely.

18.    Boitnott was born in Minnesota, resides in Minnesota, and has done so for more than forty years. He regularly frequents businesses in the surrounding area (the Area) including restaurants, convenience stores, general stores, grocery stores and other business – and has done so for years and years. His ability to independently patronize businesses in the Area and other events is important to Boitnott and his quality of life; it enables him to obtain necessary goods and services and allows him to interact with the community which is an important social outlet for him.

19.    The owner and/or operator of M&H Gas, and/or the lessee of the real property upon which M&H Gas is located at 721 Arcade Street in the City of St. Paul, Minnesota, a place of public accommodation within the meaning of the ADA.

20.    Defendant Miller & Holmes, Inc. owns and/or is the lessor of the real property upon which the M&H Gas is located, a place of public accommodation within the meaning of the ADA.

## ARCHITECTURAL BARRIERS

21.   In March of 2018, Boitnott visited M&H Gas, became aware of, and was deterred from patronizing the facility by, discriminatory barriers including, but not necessarily limited to, the following:

a.   the adjacent surface at the transition from the curb ramp to the street is not at the same level in violation of the 2010 ADA Standards 406.2;

b.   no parking stall aisles adjoining an accessible route (s) in violation of the 2010 ADA Standards, 502.3 and the 1991 ADA "Safe Harbor" Standards, 4.6;

c.   the curb ramp has vertical threshold change in level greater than 1/4 inch, in violation of the 2010 ADA Standards 403.4, 303 and 303.2;

d.   an inaccessible public entrance with a vertical threshold change in level greater than 1/2 inch, in violation of the 2010 ADA Standards 404.2.5, 303 and 303.2;

e.   a sales counter lacking a portion that is at least 36 inches long and 36 inches high as measured from the floor in violation of the 2010 ADA Standards 904.4.1;

f.   a self-serving shelf for food items, tableware, dishware, and/or condiments that has a shallow obstruction deeper than 10 inches with a parallel approach and the shelf is higher than 48 inches above the floor in violation of the 2010 ADA Standards 308.3.1;

g.   the self-service drinking station for soft drinks and coffee have an unobstructed parallel approach and the controls for the dispensing device are greater than 48 inches above the floor in violation of 2010 ADA Standards 308.3.1.

h.      a mirror placed over a lavatory with a bottom edge of the reflecting surface more than 40 inches above the floor in violation of the 2010 ADA Standards 603.3 and the 1991 ADA "Safe Harbor" Standards, 4.19.6;

i.      the operable parts of the soap dispenser, which is above a lavatory or counter no less than 20 inches and no greater than 25 inches deep is higher than 44 inches above the floor in violation of 2010 ADA Standards 308.2.2 and the ADA "Safe Harbor" Standards 4.27.3;

j.      a toilet paper dispenser that is not located greater than 48 inches above the floor in violation of ADA Standards 604.7; and

k.      a water closet toilet with a flush control that is not on the open side of the water closet in violation of violation of the 2010 Standards 604.6.

22.     The photographs attached hereto as Exhibit A depict violations identified in the preceding paragraph.

## POLICIES, PROCEDURES, AND PRACTICES

23.     In addition to remediation of the architectural barriers above, injunctive relief as to Defendants' ADA related policies, procedures and practices is required to ensure Defendants' facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and 28 C.F.R. § 36.211 and 36.501.

24.     Defendants' ADA related policies, procedures, and practices are inadequate.

25.     The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendants have failed to identify and correct the violations even

though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of Defendants' ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

26. Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and complaint, and no assurance that Defendants will stay abreast of their ADA related obligations under the law.

27. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA which exist at the facility. In order to fully identify all of the discriminatory conditions at the facility, Plaintiff requires an inspection which will be sought in the discovery phase of this litigation.

28. Compliance with the ADA is required by 42 U.S.C. § 12182(b)(2)(A)(iv) because remedying the barriers identified is readily achievable due to the lack of difficulty and low cost of remedying the barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable." 28 C.F.R. § 36.304(b).

29. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction

for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. See ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar.16, 2011).

30.     As a person with a disability, Boitnott has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

31.     Boitnott is not able to access the facility independently on a full and equal basis and is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein because of his disabilities and due to the barriers to access and violations of the ADA that exist at Defendants' facility.

32.     Boitnott lives near to the facility. Boitnott intends to patronize the facility in the future, although the unlawful barriers described herein prevent him from being able to do so independently and deter him from doing so. Boitnott's condition varies and, depending on the status of his condition on a given day, he is sometimes dependent upon having someone take him to or accompany him when he visits places. This limits his ability to make definitive plans to return to a place on a specific date. But he regularly patronizes businesses in the vicinity of the facility and would return to patronize the facility in the imminent future but for the barriers described herein.

33.     The violations discussed above presently deter and discourage Boitnott from returning to the facility for reasons including, but not necessarily limited to, the following:

the above-referenced violations make it difficult or impossible for him to patronize the facility unless he twists, struggles and strains himself or obtains help from others; and puts him at risk of injury. All of these things negatively affect Mr. Boitnott's sense of independence and can lead to humiliating accidents, derisive comments, embarrassment, a loss of dignity, and feelings of being stigmatized as different or inferior.

34.     Mr. Boitnott will return and patronize the facility without hesitation when the barriers identified herein have been removed or cured: and he will return within the next several months in any event because it is located in an area he regularly socializes in and because he is interested in checking on the Defendants' ADA compliance and that of other similar businesses as a tester in hopes to thereby increase accessibility for the disabled.

35.     Defendants have intentionally maintained the facility in a condition that violates the ADA for reasons including, but not limited to, the following: the ADA was passed in 1990 and has been well publicized; the above-described barriers are intuitive and obvious; ADA Title III compliance information and assistance is readily available, at no cost (see e.g., ada.gov); Defendants exercised control over the conditions at the facility; and Defendants have and continue to maintain the facility in a condition that does not comply with the easily understandable accessibility design standards that apply here and which can be achieved at modest expense.

36.     Boitnott is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm

upon his planned return visit to the facility unless and until Defendants are required to remove the architectural barriers to equal and independent access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

37.     Absent injunctive relief, Defendants' unlawful conduct herein described will continue to cause injury to Plaintiff and other disabled individuals, who will continue to be unable to independently access the facility and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of the rights ensured to the disabled by the ADA.

38.     The architectural barriers alleged in this complaint also violate Minnesota Human Rights Act, Minn. Stat. Chapter 363A. Notice of the architectural barriers at the Facility as required under Minn. Stat. 363A.331, Subd. 3, is hereby given and attached as Exhibit B to this complaint.

## FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICAN'S WITH DISABILITIES ACT, 42 U.S.C. §§ 12101

39.     Plaintiff incorporates and re-alleges the paragraphs above.

### Denial of Full and Equal Enjoyment and Use

40.     Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

41.    A public accommodation under the ADA includes, inter alia, "sales establishments" and "a restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12182 (7).

42.    Defendants have discriminated against Plaintiff and others by their failure to make their place of public accommodation fully accessible to persons with disabilities on a full, equal, and independent basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder as described above.

43.    Boitnott has been denied full and equal access to the facility and has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

### Failure to Remove Architectural Barriers in an Existing Facility

44.    The ADA specifically prohibits the failure to remove architectural barriers in existing facilities where such removal is readily achievable under 42 U.S.C. § 12182 (b)(2)(A)(iv) and 28 C.F.R. § 36.104.

45.    Even when an entity can demonstrate that removal of a barrier is not readily achievable, it must nevertheless provide for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations goods available through alternative means, if alternative means are readily achievable. 42 U.S.C. § 12182 (b)(2)(A)(v).

14

46.     Plaintiff alleges that removal of the barriers at the facility is readily achievable.

47.     In the alternative, to the extent the removal of any or all of the barriers at issue is not determined to be readily achievable, Plaintiff alleges that Defendants violated the ADA by failing to make the required goods, services, etc. equally available to the disabled through alternative means.

48.     To the extent that the facility was designed and constructed for first occupancy after January 26, 1993, Plaintiff alleges that removal of the barriers at the facility is not structurally impracticable under 42 U.S.C. § 12182 (b)(2)(A)(v).

49.     To the extent that the facility was altered after January 26, 1992 (including, but not limited to, any remodeling, renovation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangements in the configuration of walls and full-height partitions) Plaintiff alleges that that the facility is not accessible to the disabled to the maximum extent feasible under 42 U.S.C. § 12183 (a)(2).

### Inadequate Policies, Procedures, and Practices

50.     ADA Title III entities have an ongoing duty to review their places of public accommodation for compliance and to remediate non-compliance as required.

51.     Defendants' ADA related policies, procedures, and practices are inadequate.

52.     Defendants' policies, procedures, and practices (including, but not limited to, those ensuring the identification and remediation of prohibited barriers, maintenance of

15

accessible features, future compliance and training) are inadequate to ensure ongoing compliance with the ADA and therefore must be modified accordingly.

53.     The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendants have failed to identify and correct the violations even though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of Defendants' ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

54.     Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and complaint, and no assurance that Defendants will stay abreast of their ADA related obligations under the law.

55.     Defendants have and continue to discriminate against Plaintiff and others by their failure to adopt and implement adequate ADA related policies, procedures and practices.

56.     Injunctive relief as to Defendants' ADA related policies, procedures and practices is required to ensure Defendants' facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and such other applicable legal authority.

### Nominal Monetary Award

57.     Plaintiff alleges a right to a nominal monetary award as equitable injunctive relief in accordance with authority including *Tayler Bayer v, Neiman Marcus Group, Inc.*, No. 11-17920 (9th Cir. 2014) and such other authority as may be applicable.

## Attorneys' Fees and Costs

58.     Plaintiff has retained the undersigned counsel for the filing and prosecution

of this action, and are entitled to recover reasonable attorneys' fees, litigation expenses and

costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117 and 28 C.F.R. § 36.505, in

connection with the prosecution of this matter.

## SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

59.     Plaintiff incorporates and re-alleges the paragraphs above.

60.     This cause of action is brought pursuant to 28 U.S.C. § 2201 and Fed R. Civ.

P. 57 and/or Minn. Stat. § 555.01 et. seq. and Minn. R. Civ. Pro. 57.

61.     Plaintiff seeks and is entitled to a judgment declaring that the Facility, as of

the date this matter was commenced, was being operated unlawfully and in violation of the

ADA and its implementing regulations for reasons including, but not necessarily limited to

the unlawful denial of full and equal enjoyment of use, unlawful violations of the ADA

accessible design standards, unlawful failure to remove architectural barriers, and unlawful

policies, practices and/or procedures identified above.

WHEREFORE, Plaintiffs respectfully request:

a.     That the Court issue a Declaratory Judgment determining that Defendants'

facility, at the commencement of this instant suit, was being operated in violation of Title

III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations.

b.     That the Court issue a permanent injunction, pursuant to 42 U.S.C. §

12188(a)(2), 28 C.F.R. § 36.504(a) enjoining Defendants from continuing its

discriminatory practices; including an order directing Defendants to make readily achievable alterations to their facility so as to remove architectural barriers to access and make its facility fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and enjoining operation of the Facility until such time as the alterations are completed;

c.     That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a) enjoining Defendants to make reasonable modifications in policies, practices and/or procedures necessary to ensure current and ongoing compliance with the ADA and enjoining operation of the Facility until such time as the modifications are made and implemented;

d.     That the Court award Plaintiff injunctive relief in the form of a nominal monetary sum;

e.     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, or as otherwise provided by law; and

f.     That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

Dated: March /M, 2018

THRONDSET MICHENFELDER, LLC

By: _____
    Patrick W. Michenfelder (#024207X)
    Chad A. Throndset (#0261191)
Cornerstone Building
One Central Avenue West, Suite 203
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: pat@throndsetlaw.com
Email: chad@throndsetlaw.com
*Attorneys for Plaintiff*

The undersigned hereby acknowledges that costs, disbursement, and reasonable attorney fees may be awarded to the opposing party or parties pursuant to Minn. Stat. § 549.221

_____
Patrick W. Michenfelder

# EXHIBIT A

































# EXHIBIT B



Chad A. Throndset, Esq.
Patrick W. Michenfelder, Esq.
*Mary E. Cincotta
Special Counsel*

May 11, 2018

RE: NOTICE OF ARCHITECTURAL BARRIER

This notice is to advise you of a claim that the address identified in the complaint this notice is attached to is in violation of the Americans with Disabilities Act and/or the Minnesota Human Rights Act for failure to remove one or more architectural barriers limiting access to the premises by persons with disabilities.

**Allegation of Violation**

See the complaint this notice is attached to, the contents of which will not be repeated here in order to avoid unnecessary repetition but are instead incorporated herein, in full, by this reference.

**Accessibility Audit**

Licensed, registered, or otherwise certified professionals with knowledge of the Americans with Disabilities Act and Minnesota Human Rights Act requirements regarding physical barriers to access may be available to conduct an audit of your business establishment or place a public accommodation to advise you regarding compliance with the law. For more information, contact the Minnesota State Council on Disability at 1-800-945-8913 or visit MSCOD's Web site at http://www.disability.state.mn.us.

**Response**

Please contact, or have your attorney contact, the undersigned attorney no later than July 17, 2018 to provide a response or if you would like to engage in prelitigation settlement negotiations. Failure to respond to this notice may result in a lawsuit being filed against you.

Sincerely,

s/ Patrick W. Michenfelder

Patrick W. Michenfelder